CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAY 04 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

Mark Glenn Schroeder, :

    Petitioner, :

v. : Crim. No. 5:06CR00029-003

United States of America, :

    Respondents. :

:

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO VACATE, SET-ASIDE, OR
CORRECT THE SENTENCE PURSUANT TO 28 U.S.C. § 2255

PROCEDURAL HISTORY

On April 16, 2006, petitioner was arrested on various drug and weapons offenses in violation of 21 U.S.C. §§ 846, and 841(b)(1)(A), as well as, 18 U.S.C. § 922(g)(1).

On July 5, 2006, petitioner was indicted, and arraigned on the aforementioned charges before the Honorable Judge James G. Welsh and ordered held without bond, and remanded to U.S. Marshal custody.

That, on October 2, 2006, petitioner decided to enter into an agreement to plead guilty without a formal plea agreement.

That, on March 2, 2007, the petitioner was sentenced pursuant to a superseding indictment to a term of imprisonment of 252 months combined, followed by a fine of $100.00, for each count totaling $600.00, and a term of supervised release of five (5) years.

That, after receiving relief from Amendments 706, and 750, the petitioner's sentence was reduced to 183 months respectively.

-7-

## ACTUAL INNOCENCE STANDARD OF REVIEW

Petitioner avers that to overcome his procedural defaults such that the federal habeas court may consider the merits of his claims, the petitioner must initially show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.

However, the petitioner invokes the "exception" as expressed in Schulp v. Delo, 513 U.S. 298, 327 (1995), which held, that a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id.

That, "to establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schulp, 513 U.S. at 327.

That, to be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial. Id. quoting, Schulp.

That, in further support of his claim of applying the actual innocence exception, the petitioner relies on well-settled fourth Circuit precedent in the case United States v. Maybeck, 23 F.2d 888 (4th Cir. 1994), which held; "It is an unacceptable deviation from our fundamental system of justice to automatically prevent the assertion of actual innocence simply because a defendant has not observed procedural avenues available to him." Id.

That, it is against this backdrop that petitioner submits his claim of actual innocence to this most Honorable Court.

-8-

## QUESTIONS PRESENTED

1. WHETHER PETITIONER IS ACTUALLY INNOCENT OF HIS POSSESSION WITH INTENT TO DISTRIBUTE COCAINE BASE CHARGES IN VIOLATION OF 21 U.S.C. §§ 841(a)(1), AND (B)(1)(C)(iii), BECAUSE HE DID NOT COMMIT THE CRIME FOR WHICH HE WAS CHARGED?

2. WHETHER PETITIONER IS FACTUALLY INNOCENT OF HIS POSSESSION WITH INTENT TO DISTRIBUTE COCAINE BASE CHARGES IN VIOLATION OF 21 U.S.C. §§ 841(a)(1), AND (B)(1)(C)(iii), BY VIRTUE OF THE FACT THAT THE AMOUNT OF DRUGS DISTRIBUTED DID NOT RISE TO THE LEVEL OF FIVE GRAMS OR MORE?

3. WHETHER PETITIONER WAS UNDULY PREJUDICED IN RECEIVING AN ENHANCEMENT OF TWO POINTS FOR AN ERRONEOUSLY APPLIED MANAGERIAL ROLE IN THE OFFENSE?

4. WHETHER THE PRESENTENCE INVESTIGATION REPORT (PSR) ERRONEOUSLY ATTRIBUTED THE ENTIRE AMOUNT OF DRUGS OF THE CONSPIRACY TO HIM WHICH EFFECTIVELY ENLARGED THE SCOPE OF HIS ROLE IN THE OFFENSE EVENTHOUGH HIS ROLE WAS NO MORE THAN A PERIPHERAL ROLE?

## JURISDICTION

Jurisdiction in this case is by virtue of 28 U.S.C. § 2255 which states in pertinent part:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack may move the court which imposed the sentence to vacate, set aside or correct the sentence. Id.

## STATEMENT OF THE CASE

Petitioner avers that he is both factually, and actually innocent of count five (5) of his indictment, that being, "Possession with Intent to Distribute five (5) grams or more of cocaine base".

That, petitioner was denied his due process right guaranteed by the 5th and 6th Amendment that "protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Id. at Jackson v. Virginia, 403 U.S. 307 (1979), (quoting, In re Winship, 397 U.S. 358, 364 (1970)).

That, "a reviewing court may set aside the ...[judgment]...on the ground of insufficient evidence if no rational trier of fact could have agreed with the jury. Cavarzos v. Smith 132 S. Ct. 2, 4, (2011)(per curium). The court then considers. all the evidence, old and new, incriminating & exculpatory, with-out regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House, 547 U.S. @ 538

-10-

That, in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal court may grant a writ of habeas corpus even in the absence of a showing of cause for the procedural default. Murray v. Carrier, 477 U.S. 478 (1986).

That, petitioner further contends that he was denied effective assistance of counsel denying him his Sixth Amendment right as guaranteed by the Constitution.

That, petitioner asserts that his attorney failed to render 1) adequate legal assistance, 2) the attorney did not advocate the petitioner's cause, 3) the attorney did not provide any adversarial testing, 4) and, that petitioner will show that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 468 (1984).

## STATEMENT OF FACTS

That, the petitioner was one of eleven co-defendants in an thirteen count indictment. Petitioner, was charged in count one which was conspiracy to distribute 50 grams or more of cocaine base, count two, Felon in Possession of a firearm, Count three Possession with Intent to Distribute cocaine base, count five, Possession with Intent to Distribute five grams or more of cocaine base, and count seven, Possession with Intent to Distribute cocaine base.

-11-

Petitioner states that he is innocent of count 5, for the charge of Distribution of five grams or more of cocaine base. See Exhibit A, Virginia State Police Report.

That, this report, as it relates to count five of the indictment occurred on April 10, 2006. It was typed and dated the next day April 11, 2006, by special agent L.R. Ritenour. This report gave a detailed narrative as to the drug buy, naming everyone present from law enforcement, the defendants, and their actions throughout. This report clearly states in the third paragraph, "The CI was attempting to meet with MARK SCHROEDER or RAY-RAY".

That, report goes on to state in paragraph 4, "The CI parked in the parking lot and was unable to make contact. At approximately 1210 hours the CI drove to another location behind the 7-11, to 31 Bristol Avenue at the residence of Jerry McCorkle and Amy McCorkle was unable to make contact with SCHROEDER." Id. at VSP Police Report, dated April 11, 2006.

That, the CI did finally meet with "RAY-RAY", and then "exchanged $400.00 for approximately 4.0 grams of Crack Cocaine."

That, there was no further mention of Mark Schroeder as being involved by virtue of the fact that he was not there, and could not be located. See Exhibit B.

That, exhibit B denotes the "net weight", of the cocaine base to be 1.9 grams of a mixture containing cocaine base, which was well below the five grams needed to meet the threshold cited in count five of the indictment.

-12-

1.  WHETHER PETITIONER IS ACTUALLY INNOCENT OF HIS POSSESSION WITH INTENT TO DISTRIBUTE COCAINE BASE CHARGES IN VIOLATION OF 21 U.S.C. §§ 841(a)(1), AND (B)(1)(C)(iii), BECAUSE HE DID NOT COMMIT THE CRIME FOR WHICH HE WAS CHARGED?

That, the suggested answer is affirmative. In support, the petitioner relies on McQuiggan v. Perkins, 185 L.Ed.2d 1019 (2013), which held; "Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schulp v. Delo, 513 U.S. 298 (1995), and House v. Bell, 547 U.S. 518 (2006), or the expiration of the AEDPA statute of limitations, as in this case." Id.

That, the petitioner also relies on United States v. Maybeck, 23 F.3d 888 (4th Cir. 1994), and, United States v. Randall, 171 F.3d 195 (4th Cir. 1999).

At, issue is the fact that "no reasonable juror would have found the petitioner guilty of Count five of his indictment to distribution or possesion with intent to distribute, a mixture or substance caontaing more than five grams of cacaine base, in violation of 21 U.S.C. § 841(a)(1).

That, petitioner avers that he is actually innocent of count five by virtue of the facts that were presented by the Virginia State Police when they prepared their Report of the events that transpired on April 10, 2006.

That, in reliance upon their report, the petitioner submits that the record clearly reflects that he is in fact actually innocent of that particular charge.

That, the Virginia State Police, on April 11, 2006, made the following report that was alleged to have taken place on April 10, 2006.

-13-

Case 5:06-cr-00029-GEC   Document 577-1   Filed 05/04/15   Page 7 of 19   Pageid#: 1912

That, the report states in pertinent part:

> "On April 10, 2006, at approximately 1000 hours, Special Agent L.R. Ritenour, Sgt. Inv. Farmer and Inv. Dellinger met with a confidential informant at a prearranged location to discuss the possibility of conducting a controlled narcotics purchase in Luray VA. . .
>
> Inv. Farmer gave the informant a recorder and transmitter and Ritenour gave the informant $400.00 of VSP funds.
>
> At approximately 1050 hours the informant, Ritenour, Farmer and Dellinger, left the prearranged location. . . The CI was attempting to meet with MARK SCHROEDER or RAY-RAY.
>
> At approximately 1210 hours the CI drove to another location behind the 7-11 to 31 Bristol Avenue at the residence of Jerry McCorkle and Amy McCorkle was unable to make contact with SCHROEDER. . ." Id. at VSP Report of 4/11/2006.

That, the Virginia State Police (VSP) report clearly and unequivocally shows that the petitioner was not involved in the transaction that took place on April 10, 2006. See Exhibit A, & B-1.

That, the original VSP reports clearly and unequivocally show that the petitioner was not involved in the transaction that took place on April 10, 2006, and that the government, in their subsequent reports, and summary of evidence documents altered its version of events that took place on April 10, 2006, to include the petitioner as a participant when he clear was not. See exhibits C & D.

Simply put, there was no evidence, and none was presented, that would have shown that a reasonable jury would have concluded that petitioner possessed with intent to distribute more than five grams of a mixture or substance containing cocaine base.

-14-

2.  WHETHER PETITIONER IS FACTUALLY INNOCENT OF HIS POSSESSION WITH INTENT TO DISTRIBUTE COCAINE BASE CHARGES IN VIOLATION OF 21 U.S.C. §§ 841(a)(1), AND,(B)(1)(C)(iii), BY VIRTUE OF THE FACT THAT THE AMOUNT OF DRUGS DISTRIBUTED DID NOT RISE TO THE LEVEL OF FIVE GRAMS OR MORE?

The suggested answer is affirmative. See attached exhibits.

That, at issue is the fact that the defendant is factually innocent of Possess with Intent to Distribute five grams of a mixture or substance containing cocaine base, by virtue of the fact that the government produced no evidence in the form of lab reports and such to prove by a preponderance of the evidence that the amount of cocaine base attributed to petitioner was more than 1.9 grams.

That, according to the documents presented by the government in concluding that petitioner in fact distributed more than five or more grams of cocaine base, the government produced evidence of petitoner's involvement in four drug transactions on four separate occasions. They are as follows:

1) On April 5, 2006, the petitioner was allegedly involved in a drug transaction that involved .77 grams of cocaine base.

2) On April 6, 2006, the petitioner was allegedly involved in a drug transaction that involved .64 grams of cocaine base.

3) On April 10, 2006, the petitioner was allegedly involved in a drug transaction that involved 1.9 grams of cocaine base.

4) On April 12, 2006, the petitioner was allegedlt involved in a drug transaction that involved .2 grams of cocaine base.

That, all of the aforementioned drug amounts combined add-up to <u>only</u>, 3.51 grams of cocaine base, which is well-short of the five gram threshold required under the statute.

-15-

Moreover, the April 10, 2006, transaction/drug sale, took place without petitioner's presence or knowledge, thereby reducing the total amount to 1.61 grams of cocaine base. Simply put, the petitioner should not have been held accountable for more than 1.61 grams of cocaine base period.

That, in support, the petitioner relies on United States v. Randall, 171 F.3d 195 (4th Cir. 1999), which held; "In determining the amount of drugs attributable to a defendant convicted of drug conspiracy, the district court may consider relevant information that is prohibited from being introduced at trial, including, co-conspirators' hearsay statements. Further, the district court may attribute of the defendant the total amount of drugs in the conspiracy, provided the drug quantities were reasonably foreseeable to the defendant and are within the scope of the conspiratorial agreement. The government must prove the drug quantities attributable to the defendant by a preponderance of the evidence." Id.

The Fourth Circuit, goes on to state; "neither the guidelines nor the courts have required precise calculations of drug quantity. A ditrict court's approximation of the amount of drug is not clearly erroneous if supported by competent evidence in the record. If the district court relies on information in the presentence report in making findings, the defendant bears the burden of establishing that the information relied on by the district court in making its findings is incorrect; mere objections are insufficient." Id. See also, United States v. Muzur, 571 Fed. Appx. 234 (4th Cir. 2014)("Sentence for violating 21 U.S.C. § 846 was vacated and the case remanded as the district court failed to provide a sufficient explanation for its drug weight calculation.")

-16-

That, because there was no individual assessment made as to the actual drug amount attributed to the petitioner, the petitioner's Sixth Amendment rights were violated because the was erroneously enhanced by the amount of drugs that were attributed to him during the entire conspiracy.

That, in <u>United States v. Manuel-Calixt Mendez</u>, 484 Fed. Appx. 790 (4th Cir. 2012), this Circuit held; "For sentencing purposes, the government must establish the amount of drugs involved by a preponderance of the evidence. Where there is no drug seizure or the amount does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. U.S. Sentencing Guidelines Manual § 2D1.1, cmt., application n. 12 states that a district court is not required to precisely calculate attributable drug weight, but may instead approximate drug quantity." Id.

The petitioner avers that the government did not establish by a preponderance of the evidence that the petitioner's drug weight attributed him amounted to more than 3.51 grams, which were from individual sales made by the petitioner for petitioner's own personal gain and not in any way connected to the entire conspiracy.

That, the government did not establish by a preponderance of the evidence that it was attributing the amount of drugs of the entire conspiracy on "uncorroborated hearsay" in determining sufficient reliablity of the drug quantity. And, that in any event, the petitioner did not have the opportunity to rebut or explain the erroneous drug amounts in court. See <u>Mendez</u> supra.

-17-

3.  WHETHER PETITIONER WAS UNDULY PREJUDICED IN RECEIVING AN ENHANCEMENT OF TWO POINTS FOR AN ERRONEOUSLY APPLIED MANAGERIAL ROLE IN THE OFFENSE?

The suggested answer is affirmative. At issue is the fact petitioner was unduly prejudiced in receiving an enhancement of two points based upon an erroneous application and or, determination that he was a manager or supervisor of the drug conspiracy.

That, in the government's "summary of evidence to support defendant's pleas of guilty", it portrayed petitioner as a "pivotal player in this conspiracy", eventhough the evidence only pointed to "approximately forty (40)" purchase(s), and more than likely, many more purchase(s) than what was stated.

That, while it can be said that petitioner purchased crack on many, many occasions, there is simply no evidence other than a "buyer/seller relationship" to which does not rise to the level of a supervisor or managerial role to support the enhancement under § 3B1.1(b). Moreover, it does not even establish that the petitioner was involved in the conspiracy.

That, in the case United States v. Slade, 631 F.3d 185 (4th Cir. 2014), this Circuit held; The enhancement is appropriate where the evidence demonstrates that the defendant controlled the activities of other participants or exercised management responsibility." Id. (quoting, United States v. Bartley, 230 F.3d 667, at 673-74 (4th Cir. 2014)).

That, as with Slade, "it is clear that [petitioner] sold illegal drugs, [b]ut being a buyer [or] seller of illegal drugs, even in league with...five or more other persons, does not establish that a defendant has functioned as a...manager or supervisor of criminal activity." Id. at supra, at 190.

-18-

That, the petitioner avers that the government (1) did not show an agreement between petitioner and two or more persons other than to buy drugs, and in turn consume said drugs. (2) the government did not prove that petitioner knew in advance of an agreement, and (3) the government did not prove that the petitioner knowingly and voluntarily joined the conspiracy with the intent on "controlling the activities of other participants", namely his wife, daughter, and son-in-law. In other words, the petitioner's conduct involved being a participant in the buying and using of drugs and not in the buying and selling, with the intent of re-selling or re-distributing the cocaine base.

That, "while evidence of a buyer-seller relationship alone is insufficient to establish a conspiracy, such evidence is at least relevant (i.e. probative) on the issue of whether a conspiratorial relationship exists." Id. at Muzur, at 236.

That, in Slade, the Fourth Circuit made the following observation:

> "According to PSR, which the district court adopted, Slade was a mid[-]to upper-level member of the drug conspiracy who sold or delivered cocaine and cocaine base both to his own clientele and to other members of the conspiracy, who, in turn, sold drugs to their clientele. Certain conconspirators also sold cocaine and cocaine base for Slade on various occasions. The PSR reveals further that an unidentified co-conspirator drove Slade to various locations to deliver cocaine base to his clients. These are the only factual findings supporting the role enhancement assessed against Slade, and they do not justify imposition of an enhancement for a management or supervisory role." Id. at 190. Supra.

-19-

That, in this case the record reflects that petitioner's alleged co-conspirators that he was allegedly a "manager" or "supervisor" of were none other than petitioner's wife, Sheila, daughter, and son-in-law.

That, the record also reflects that petitioner's "family members" were simply "get-high" partners and nothing more, and that their involvement in this alleged conspiracy was not to take orders from petitioner as subordinates, but merely as family members who along with petitioner bought drugs from Rayvon Brown in order to perpetuate a continuing source of good crack cocaine. In other words, for convenience. Thus, petitioner's desiganation as a manager or supervisor is erroneously applied, and under the totality of the circumstances standard lends further credence that the petitioner is actually innocent of the conspiracy as well.

4. WHETHER THE PRESENTENCE INVESTIGATION REPORT (PSR) ERRONEOUSLY ATTRIBUTED THE ENTIRE AMOUNT OF DRUGS OF THE CONSPIRACY TO HIM WHICH EFFECTIVELY ENLARGED THE SCOPE OF HIS ROLE IN THE OFFENSE EVENTHOUGH HIS ROLE WAS NO MORE THAN A PERIPHERAL ROLE?

The suggested answer is affirmative. That, at issue is the fact that the probation department, in its preparation of the PSR improperly enlarged the scope and or scale of the crime for which the petitioner was charged in order to secure a longer sentence than it would have otherwise had obtained.

That, the probation department was allowed to grossly enlarge petitioner's role in the alleged conspiracy in terms of the amount of the co-conspirators that he was alleged to have managed. And, that the probation department attributed almost the entire amount of the drugs to petitioner eventhough his role was no more than a peripheral role.

-20-

That, petitioner has always vehemently denied being (1) a manager or supervisor in this case, and (2) for being responsible for more than the amount of drugs he was actually responsible for actually selling.

By presenting this case in the manner in which the government was presenting it, presented an appearance that the petitioner was this big organizer of this alleged conspiracy when the truth of the matter was that he was not this big organizer, but simply a person who made it easier for himself, and his family members to acquire crack cocaine from a source who simply had access to the drug itself.

That, the amount of drugs attributed to petitioner were grossly over-blown so as to extract the greatest damage against the petitioner in terms of actual prison time he was facing, and to use as leverage in the inducement of the improvident plea.

That, by making petitioner's family members subordinates, and by attributing 1.5 kilograms of cocaine base to petitioner, gave the government the leverage they needed to extract a two point enhancement, and higher drug range to put petitioner in a higher category, and in turn give petitioner much more time than he would have normaly been exposed to, had it not been for the government's over-exaggerations with respect to the charges in this case.

That, the only thing the petitioner is guilty of in this case is guilty of numerous purchases of cocaine base from Rayvon Brown in order to keep his, and his family members course of self-gratification going. Nothing more, nothing less.

-21-

## PETITIONER'S WAIVERS WERE
## INVOLUNTARILY AND UNINTELLIGENTLY GIVEN

Petitioner avers that his waivers expressed pursuant to his plea agreement was involuntarily and unitelligently given, because they were based upon petitioner being grossly misinformed by his attorney, and the government prior to the inducement of his plea and subsequent waivers.

That, in support, the petitioner relies on <u>Strader v. Garrison</u>, 611 F.2d 61 (4th cir. 1979), cert. denied, 470 U.S. 1049 (1985), which held; "The plea of a criminal defendant thus misinformed may be said to be both 'involuntary and unintelligent'. When the misadvice of a lawyer, (or court, or prosecutor) is so gross as to amount to a denial of the constitutional right . . .leading a defendant to enter an improvident plea, striking the sentence and permitting a withdrawal of the plea seems only a necessary consequence of the deprivation of the right of counsel. Deprivation of the constitutional right cannot be left unredressed. When it has occasioned the entry of a guilty plea, the inevitable redress is an order striking the plea or release of the prisoner." Id. supra.

That, an appellate court will not enforce a plea agreement's waiver of the right to appeal a sentence . . . when the waiver was not made knowingly, voluntarily, and competently." Id. quoting, <u>United States v. Bolino</u>, 450 Fed. Appx. 47 (2d Cir. 2011).

That, because petitioner was grossly misinformed by all of the parties, (i.e., his lawyer, the court, and the prosecutor), his plea, and any possible waivers cannot stand up to constitutional muster and his plea must be withdrawn.

-22-

## PETITIONER'S ATTORNEY FAILED TO SUBJECT THE PROSECUTION TO ANY MEANINGFUL ADVERSARIAL TESTING IN VIOLATION OF PETITIONER'S SIXTH AMENDMENT RIGHTS

Petitioner's attorney failed to subject the prosecution to any menaingful adversarial testing in violation of petitioner's Sixth Amendment Rights. This is true simply because petitioner had asked his attorney as to why he was being held responsible for so much of the drug weight when he only was responsible for such a small amount, and why was he not contesting the drug weight?

That, petitioner's attorney responded by erroneously stating that it did not make any sense to contest the drug weight because the drug weight and the Armed Career Criminal Act, were both set at a Base Offense Level (BOL) of 38. This was allegedly premised upon the erroneous assumption that the amount of drugs attributed to the petitioner was 1.5 kilograms, which at that time in 2006, placed petitioner's BOL at 38. In addition, petitioner's designation as a Armed Career Criminal, was allegedly also set at 38, which was set for the amount of drugs that were attributed him. However, the ACCA designation should not have placed petitioner higher than a BOL of 33. And, because petitioner was given a three-point reduction for acceptance of responsibility, the petitioner's BOL, at category VI, would have placed him at a guideline range of between 168-to-210 months as a starting point in the negotiation process. If the attorney would have subjected the prosecution to meaningful adversarial testing as required by the 6th Amendment, the petitioner's attorney would have been acting in the role as an advocate and thus, provided effective assistance of counsel. In not, as is the case at bar, petitioner's 6th Amendment rights would be violated.

-23-

## CONCLUSION

In conclusion, the petitioner requests this most Honorable Court look at this case under the "Totality of the Circustances" standard when looking at the facts and circumstances with respect to this case in its entirety as set-forth in <u>United States v. General</u>, 278 F.3d 389, 400 (4th Cir. 2000).

## PRAYER FOR RELIEF

Wherefore, these reasons stated in the aforementioned, the petitioner prays this most Honorable Court make him whole and find him actually innocent of count five, as well as his Role as a supervisor or manager, and that he is also innocent of his role as a conspirator with Rayvon Brown.

                                        Respectfully Submitted,

                                        */s/ Mark Glenn Schroeder*
                                        Mark Glenn Schroeder, Pro-se
                                        Fed.Reg.#08342-007
                                        FCI-Fairton
                                        P.O.Box-420
                                        Fairton, NJ 08320

CERTIFICATE OF SERVICE

I, hereby certify and declare that a true and accurate copy of the foregoing Motion to Vacate, Set-aside, or Correct the sentence was placed into the hands of this institution's mail person on this 28TH day of APRIL, 2015, to make service on A.U.S.A. Donald Wolthuis, P.O.Box-1709, Roanoke, VA 24008.

*Mark Glenn Schroeder*
Mark Glenn Schroeder, Pro-se
Fed.Reg.#08342-007
FCI-Fairton
P.O.Box-420
Fairton, NJ 08320

-25-

Case 5:06-cr-00029-GEC   Document 577-1   Filed 05/04/15   Page 19 of 19   Pageid#: 1924